1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MAI XIONG,

11                 Plaintiff,                        No. CIV S-05-1505 PAN

12         vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15                 Defendant.                        ORDER

16   _____/

17                 The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20   Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny plaintiff's motion for summary judgment or remand and

22   grant the Commissioner's cross-motion for summary judgment.

23   /////

24   /////

25   /////

26   /////

                                                  1

1   I.  Factual and Procedural Background

2           In a decision dated December 11, 2002 (hereinafter "2002 decision"), the ALJ

3   determined that plaintiff was not disabled.[1]  Administrative Transcript ("AT") 18-21.  Plaintiff's

4   appeal of this decision was rejected by the Appeals Council on February 12, 2003.  AT 4.

5   Plaintiff appealed this denial.  On December 30, 2003, the Commissioner agreed to voluntarily

6   remand this case under sentence four of 42 U.S.C. § 405(g).  AT 284-86.  Under the stipulation,

7   the 2002 decision of the ALJ was vacated.  AT 284.

8           On September 23, 2004, following a new hearing in this case, the ALJ determined

9   that plaintiff was not disabled (hereinafter "2004 decision").  At this hearing, plaintiff amended

10

11           [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
    is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:
15
                Step one:  Is the claimant engaging in substantial gainful
16      activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
17              Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
18      appropriate.
                Step three:  Does the claimant's impairment or combination
19      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
20      determined disabled.  If not, proceed to step four.
                Step four:  Is the claimant capable of performing his past
21      work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
22              Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
23      disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

1   her period of disability from May 2001 to her return to work date of October 2003.  AT 322.  The

2   ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

3   plaintiff's request for review of the 2004 decision.  The ALJ found that the medical evidence did

4   not support finding that plaintiff had a medically determinable severe impairment; that plaintiff's

5   subjective allegations were not credible to the extent alleged and were insufficient to support the

6   conclusion that plaintiff had a severe impairment; that plaintiff did not have any impairments

7   that, either singly or in combination, significantly limited her ability to perform basic work-

8   related activities; and that plaintiff was not disabled.  AT 260-61.

9          Plaintiff contends that the ALJ committed numerous errors.  First, plaintiff argues

10  that the ALJ erred by concluding that plaintiff did not have a severe impairment.  In making this

11  argument, plaintiff argues that the doctrine of res judicata requires adoption of the 2002 decision

12  finding that plaintiff had a severe impairment.  Furthermore, plaintiff alleges that the evidence in

13  the record demonstrates the severity of her impairment.  Second, plaintiff argues that the ALJ

14  failed to properly credit the opinion of her treating physician.  Finally, plaintiff contends that the

15  ALJ's failure to give greater weight to the opinion of plaintiff or her third-party witness was in

16  error.

17  II.  Standard of Review

18         The court reviews the Commissioner's decision to determine whether (1) it is

19  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

20  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

21  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

22  Substantial evidence means more than a mere scintilla of evidence, but less than a

23  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

24  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

25  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

26  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

1  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

2  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

3  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

4  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

5  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

6  substantial evidence supports the administrative findings, or if there is conflicting evidence

7  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

8  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

9  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

10 1335, 1338 (9th Cir. 1988).

11 III.  Analysis

12      a.  The ALJ's Finding that Plaintiff Did Not Have a Severe Impairment Was Not in Error.

13          In his 2004 decision, the ALJ found that plaintiff did not suffer from any severe

14 impairments.  AT 260.  The ALJ reached this finding based upon his assessment of the evidence

15 in the entire record, including the relevant medical evaluations, plaintiff's testimony, and other

16 evidence offered by third-party witnesses.  This finding was not in error.

17          Plaintiff makes an initial argument that the ALJ erred by not presumptively

18 applying the findings from the 2002 decision to this case.  In the 2002 decision, the ALJ found

19 plaintiff to suffer from the severe impairment of moderate single episode depressive disorder.

20 AT 18.  According to plaintiff, the doctrine of res judicata requires adherence to this previous

21 finding.

22          The doctrine of res judicata applies to final decisions made by the Commissioner.

23 See Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985).  However, the doctrine should

24 not be applied inflexibly.  Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).  Administrative

25 res judicata may be circumvented when necessary to avoid manifest injustice.  See Davis v.

26 Schweiker, 665 F.2d 934, 936 (9th Cir. 1982).

4

1    Application of res judicata requires a "final decision" by the Commissioner.  See

2 Krumpelman, 767 F.2d at 588; Davis, 665 F.2d at 935; 42 U.S.C. § 416.1457(c)(1).  The Social

3 Security Act grants the Commissioner the authority to define "final decision."  42 U.S.C.

4 § 405(a);  Sims v. Apfel, 530 U.S. 103, 105, 120 S.Ct. 2080 (2000);  Weinberger v. Salfi, 422

5 U.S. 749, 766, 95 S.Ct. 2457, 2467 (1975)("The statutory scheme is thus one in which the

6 Secretary may specify such requirements for exhaustion as he deems serve his own interests in

7 effective and efficient administration.")  The regulations permit judicial court review only after a

8 plaintiff has completed the administrative process.  20 C.F.R. § 404.900(a)(5).  This process

9 requires an initial determination, reconsideration, hearing before an ALJ, and Appeals Council

10 action upon request for review.  20 C.F.R. § 404.900(a)(1)-(4).

11    Such steps occurred in this case; however, it cannot be said that the Commissioner

12 reached a final decision sufficient to permit application of res judicata.  The ALJ's prior findings

13 in this case were not final as the agreed upon stipulation to remand vacated the 2002 decision.

14 AT 284.  A vacated opinion is not a final decision.  See Flaten v. Secretary of Health and Human

15 Services, 44 F.3d 1453 (9th Cir. 1995)("The magistrate judge erred, therefore, in accepting the

16 vacated ALJ factual findings as undisputed fact, because the district court's review is necessarily

17 limited to the final decision of the Secretary[.]")(emphasis in original).  The doctrine of res

18 judicata does not apply.

19    Alternatively, plaintiff contends that the ALJ's 2004 decision improperly assessed

20 the severity of her impairments and failed to consider all of them in combination.  An

21 impairment is "not severe" only if it "would have no more than a minimal effect on an

22 individual's ability to work, even if the individual's age, education, or work experience were

23 specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose

24 medical impairment is so slight that it is unlikely they would be disabled even if age, education,

25 and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287

26 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

5

Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996);  see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments must be considered in combination in assessing severity.  20 C.F.R. § 404.1523.

Plaintiff offered evidence in support of her claim from numerous sources. Plaintiff was seen by her treating physician, Dr. Su, a doctor of oncology and internal medicine, starting on February 28, 2001.  AT 183.  At that time, Dr. Su diagnosed plaintiff with a history of depression and low intellectual functioning.  AT 183.  Subsequent progress notes from Dr. Su reveal little additional evidence and diagnose a variety of impairments, including depression, AT 179, 181, chronic fatigue, AT 175, arthritis, AT 176, fibromyalgia, and GERD/PUD, AT 182. On one occasion, Dr. Su made no findings.  AT 177.

Dr. Su completed a functional assessment of plaintiff's physical abilities on July 16, 2002.  AT 235-37.  Dr. Su found plaintiff credible and diagnosed her with clinical depression.  AT 237.  Dr. Su determined that plaintiff was able to walk, stand, or sit for only one to two hours in an eight hour day.  AT 235.  In addition, Dr. Su found that plaintiff could only occasionally lift up to 10 pounds, was partially restricted in climbing stairs or ladders, and fully restricted in bending.  AT 236.  Dr. Su concluded that plaintiff was able to perform less than the full range of sedentary work.  AT 237, 238.

During this time, plaintiff was also treated at the Sacramento County Mental Health Adult Psychiatric Support Services (APSS) Clinic (hereinafter "Sacramento County"). This treatment began on June 6, 2001.  AT 165-68.  At the time of her initial screening, plaintiff complained of depression that manifested itself through difficulty sleeping, feelings of hopelessness, guilt, poor appetite, and anger.  AT 165.  As a result of her impairments, doctors prescribed Prozac and referred plaintiff to a Hmong support group.[2]  AT 168.

---

[2]The Hmong are an Asian ethnic group speaking the Hmong language, whose homeland is in the mountainous regions of southern China, northern Vietnam, Laos, Myanmar, and Thailand.  http://en.wikipedia.org/wiki/Hmong_people

1    While being treating at Sacramento County in 2001, plaintiff reported a general

2   improvement, including a decrease in nightmares and an increase in sleep.  AT 161.  By October

3   23, 2001, plaintiff's only complaint was chronic pain.  AT 222.  On her final date of treatment on

4   March 28, 2002, plaintiff reported that she was "feeling fine."  AT 219.

5    On July 5, 2001, examining neurologist Dr. Sharma evaluated plaintiff's physical

6   complaints of pain and numbness in the left upper and lower extremities and back that

7   contributed to recurrent headaches.  AT 123.  After an essentially normal examination, Dr.

8   Sharma diagnosed plaintiff with subjective sensory loss in the left upper and lower extremities to

9   pinprick, subjective tenderness in the neck and back, complaints of muscle tension headaches,

10   and a history of depression and insomnia.  AT 126.  Based on his examination, Dr. Sharma

11   opined that plaintiff had no physical limitations.  Id.

12    Plaintiff was evaluated on July 9, 2001, for her mental impairments by Dr. Bates.

13   Dr. Bates, a diplomate with the American Board of Psychiatry and Neurology, found plaintiff to

14   have depressed symptoms, difficulty maintaining her home, and suicidal or homicidal thoughts.

15   AT 134.  Dr. Bates found plaintiff moderately impaired in the following ways: her ability to

16   understand, remember, and carry out simple one or two step instructions; her ability to do

17   detailed and complex instructions; her ability to relate and interact with supervisors, coworkers,

18   and the public; her ability to maintain concentration and attention, persistence, and pace; her

19   ability to associate with day-to-day work activity, including attendance and safety; her ability to

20   maintain regular attendance in the work place and perform work activities on a consistent basis;

21   and her ability to perform work activities without special or additional supervision.  AT 134-35.

22   Dr. Bates also found plaintiff moderately to markedly impaired in her ability to adapt to the

23   stresses common to a normal work environment.  AT 134.

24    Nonexamining physicians with the State Agency reviewed plaintiff's medical

25   records on July 24, 2001.  AT 136.  The State Agency found plaintiff to have severe impairments

26   of depression, but determined that those impairments were not expected to last more than 12

1   months.  AT 136, 139.  As a result of her impairment, the State Agency found that plaintiff

2   suffered from mild restrictions in daily living and difficulties maintaining concentration,

3   persistence and pace.  AT 146.  In addition, the State Agency found plaintiff moderately impaired

4   in her social functioning.  Id.  Based on plaintiff's impairments, the State Agency determined

5   that plaintiff was moderately limited in her ability to understand, remember, and carry out

6   detailed instructions; her ability to work in coordination with or in proximity to others without

7   being distracted; her ability to interact with the public, accept criticism from supervisors, and get

8   along with coworkers; and her ability to travel in unfamiliar places or set realistic goals.  AT 150-

9   51.  However, the State Agency determined that these impairments were not likely to last beyond

10  May 2002.  Id.

11          The State Agency conducted a second review of plaintiff's medical records on

12  November 13, 2001.  AT 188.  As in its prior evaluation, the State Agency determined that

13  plaintiff was not expected to be disabled for longer than 12 months.  Id.  With treatment, the

14  State Agency found that by February 2002, plaintiff was likely to suffer only mild impairments in

15  all functional categories.  Id.

16          Following vacation of the 2002 decision, a final consultative examination

17  occurred on August 4, 2004.  AT 311-315.  Examining psychologist Dr. Stearns stated that it was

18  possible that plaintiff had a genuine, underlying impairment.  AT 315.  However, she was unable

19  to assess the impact of plaintiff's mental impairments on her ability to function because of

20  suspicions of malingering.  AT 315, 316.

21          Plaintiff argues that the ALJ failed to recognize as severe a number of alleged

22  impairments and that the ALJ failed to consider the combination of plaintiff's physical and

23  mental condition including depression, chronic back and shoulder pain, insomnia and fatigue,

24  and headaches.  However, the ALJ correctly noted that the medical evidence contained little

25  objective support for these impairments.  There are no abnormal diagnostic tests in the record,

26  nor does the record contain any evidence of MRIs, x-rays, or other tests that might illuminate

8

some cause for plaintiff's complaints of pain.  Physical examinations by Dr. Su found few

consistent physical ailments.  The examining physician reported that plaintiff had no functional

limitations.  AT 123.

Although the burden is on plaintiff at step two of the sequential evaluation, see

Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), counsel for plaintiff has offered no

meaningful argument in support of the claim that the ALJ erred at step two.  Dr. Su diagnosed

plaintiff with depression and stated that her impairments left her unable to complete even the

most basic and nonexertional category of work.  However, his functional assessment is not

supported by any "medically accepted clinical diagnostic techniques" sufficient to meet the

threshold requirements of step two.  SSR 96-4p; Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th

Cir. 2005).

Rather, the absence of any record of diagnostic evaluation makes it appear as if

Dr. Su relied primarily upon plaintiff's subjective complaints of illness.  Plaintiff's own

"perception or description" of her problems is not sufficient evidence supporting her claim.  20

C.F.R. § 416.928(a)-(b).  This is particularly noteworthy given plaintiff's lack of credibility.  As

explained in detail below, the ALJ correctly discounted plaintiff's subjective complaints of

impairment.

The reason given by Dr. Su for plaintiff's functional limitations further

demonstrates the disconnect between his lack of findings and his opinion.  Dr. Su, despite his

oncology and neurology specialty, described plaintiff's primary impairment as major depression.

AT 235.  He provides no secondary diagnosis.  Id.  However, Dr. Su's functional restrictions deal

entirely with her physical limitations rather than her mental limitations and are based primarily

upon plaintiff's complaints of pain and weakness.  AT 236, 237.  This assessment is

fundamentally flawed because it provides no explanation for how plaintiff's mental impairment

leads to physical pain and an inability to perform the exertional demands of work.

/////

9

1          In addition, the evidence does not establish that plaintiff's mental impairments

2   were likely to last longer than 12 months.  See 42 U.S.C. § 423(d)(1)(A)(2004 ed.)(defining

3   disability as "an inability to engage in any substantial gainful activity by reason of any medically

4   determinable physical or mental impairment which can be expected to result in death or which

5   has lasted or can be expected to last for a continuous period of not less than 12 months.")  Dr. Su

6   offered no opinion regarding the duration of plaintiff's impairment.  The most pessimistic

7   evaluation from the State Agency stated that plaintiff's impairments were not likely to last more

8   than 10 months.  AT 146.  The later evaluation reduced plaintiff's period of expected impairment

9   to seven months, from May 2002 down to February 2002.  AT 150-51.  By February 2002, the

10  State Agency opined that plaintiff would only suffer mild impairments in all functional

11  categories.  Mild mental impairments are generally not severe.  20 C.F.R. § 416.920a(d)(1).

12         Additional evidence in the record supports these State Agency conclusions.  The

13  ALJ correctly noted that plaintiff showed considerable improvement over the course of her

14  treatment.  AT 258.  Her treating physician at Sacramento County found her mood to be "stable."

15  Id.  Plaintiff reported consistently improving symptoms, ultimately declaring that she was

16  "feeling fine."  AT 219.  This declaration occurred in March 2002, just one month after the State

17  Agency opined that her symptoms would no longer be severe.  Finally, as noted by the ALJ, the

18  State Agency opinion was reinforced by plaintiff's eventual return to the work force in 2003.  AT

19  259.

20         Indeed, as highlighted by the ALJ, it was plaintiff's return to work, and the reason

21  behind it, that provided the strongest evidence that her impairments were not severe.  Plaintiff

22  testified that the reason she went back to work was because she was "too sick and too stressed"

23  while at home.  AT 324.  At the hearing prior to the 2004 decision, plaintiff stated that she

24  worked packing clothes at JC Penney five days a week from 6 a.m. until 2 p.m..  AT 323.  A

25  severe impairment must have an effect on a person's ability to work.  SSR 85-28.  As stated by

26  /////

10

1   plaintiff, work was how she treated her impairments.  Work that serves as therapy can hardly be

2   considered severe.

3          The ALJ correctly noted that the medical evidence in this case does not

4   demonstrate a severe impairment, either in its intensity or duration.  As discussed below, the ALJ

5   properly evaluated and weighed the medial evidence and other testimony in reaching this

6   conclusion.  The ALJ's findings will not be disturbed.

7          b.   The ALJ Properly Weighed the Medical Evidence from Plaintiff's Treating Physician.

8          The ALJ gave no weight to the medical source statement of plaintiff's treating

9   physician, Dr. Su.  AT 259.  The ALJ discredited this opinion based upon the lack of clinical

10  findings by Dr. Su to support it.  In addition, the ALJ noted the contrary medical opinions from

11  the consultative examining physician in the record.  The ALJ's weighing of the medical evidence

12  in this case was not in error.

13         The weight given to medical opinions depends in part on whether they are

14  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

15  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

16  who has a greater opportunity to know and observe the patient as an individual.  Id.;  Smolen, 80

17  F.3d at 1285.

18         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

19  considering its source, the court considers whether (1) contradictory opinions are in the record;

20  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

21  treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

22  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

23  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

24  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

25  examining professional's opinion (supported by different independent clinical findings), the ALJ

26  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

11

1 | Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give

2 | weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172

3 | F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion

4 | rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional,

5 | without other evidence, is insufficient to reject the opinion of a treating or examining

6 | professional.  Lester, 81 F.3d at 831.

7 | As noted above, Dr. Su treated plaintiff starting on February 28, 2001.  AT 183.

8 | On July 16, 2002, Dr. Su completed a functional assessment of plaintiff that concluded that her

9 | depression and other physical impairments left her unable to perform sedentary work. AT 235-

10 | 37.  The ALJ's decision to give no weight to this opinion was proper.

11 | The ALJ correctly found that Dr. Su's opinion is without any clinical support.  AT

12 | 259.  There is no indication that Dr. Su relied upon any objective measure to reach his

13 | conclusion.  Dr. Su's records are noticeably scarce in their findings and observations.  There are

14 | no MRIs, x-rays, CT scans, or referrals to other physicians to address the myriad problems

15 | complained about by plaintiff.  Laboratory results show some abnormalities; however, there is no

16 | indication that they were of any concern as the record does not document any response.  AT 171-

17 | 72, 230-31.

18 | Conclusory opinions like that offered by Dr. Su may properly be discounted.  See

19 | Meanel, 172 F.3d at 1113.  The absence of any findings to support his opinion, or objective

20 | evidence from other health care providers, casts doubt upon the assertions of the treating

21 | physician.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,  1195

22 | (9th Cir. 2004)(giving minimal weight to treating physicians opinions when clinical findings are

23 | not present); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1988)(discrediting medical opinion

24 | of treating physician who had prior relationship with claimant where only report in record was in

25 | conclusory form).  When contradicted, the treating physician's opinion is entitled to controlling

26 | weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques[.]" 20 C.F.R. §416.927(d)(2).  Without more to support his statements about the extent of plaintiff's disability, the conclusions drawn by the treating physician may be discredited in light of other contradictory opinions and evidence in the record.

The ALJ identified that Dr. Su's findings differ significantly from the examining physician, Dr. Sharma.  AT 259.  According to Dr. Sharma, plaintiff had no functional restrictions preventing her from performing all types of work.  AT 126.  The ALJ noted that Dr. Sharma found no clinical abnormalities in his examination.  AT 259.  The ALJ's reliance on the opinion of an examining physician who performed his own independent evaluation of plaintiff is a specific and legitimate reason to discount the opinion of the treating physician.  Magallanes, 881 F.2d at 751.

The ALJ properly rejected the opinion of plaintiff's treating physician.  The absence of clinical support, as well as the contradictory findings of Dr. Sharma are specific and legitimate reasons to give Dr. Su's opinion no weight.  The ALJ's findings were not in error.

c.  The ALJ's Evaluation of Plaintiff's and Her Third-Party Witnesses' Testimony Was Not In Error.

The ALJ refused to credit plaintiff's complaints.  AT 259.  In reaching this decision, the ALJ noted the lack of objective clinical support for plaintiff's subjective complaints.  This finding was not in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

1    F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

2    the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

3    medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

4    (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

5    testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

6    prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d at 1284;

7    see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work

8    records, physician and third party testimony about nature, severity and effect of symptoms, and

9    inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

10   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

11   debilitating medical problem may be a valid consideration by the ALJ in determining whether the

12   alleged associated pain is not a significant nonexertional impairment.  See Flaten, 44 F.3d at

13   1464.    The ALJ may rely, in part, on his or her own observations, see Quang Van Han v.

14   Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.

15   Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of

16   malingering, "the Commissioner's reasons for rejecting the claimant's testimony must be clear

17   and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

18   1999).

19          The ALJ found few objective signs to support plaintiff's allegations.  AT 259.  As

20   described in detail above, the record contains little evidence to support plaintiff's complaints or

21   to support any finding that those complaints met the durational requirements of the Act.  The

22   ALJ properly noted the distinct lack of clinical evidence to support plaintiff's subjective

23   complaints of disability.

24          The ALJ also noted that the daily activities performed by plaintiff were

25   inconsistent with her claimed level of disability.  Plaintiff testified to being able to do very little

26   as a result of her impairments.  AT 324.  However, her husband stated in a third-party

1  questionnaire that she was able to care for herself and perform household chores when she was

2  not suffering from her symptoms.  AT 104-05.  This inconsistency was a clear and convincing

3  basis upon which to judge plaintiff's and her husband's credibility.  See Dodrill v. Shalala, 12

4  F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses,

5  he must give reasons that are germane to each witness.")

6          Plaintiff's ability to engage in some daily activities does not compromise her

7  subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);

8  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th

9  Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled).

10  However, the ALJ noted the testimony from plaintiff's husband that described the numerous

11  activities plaintiff completed that were consistent with those necessary for productive work.  See

12  Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and

13  occasionally care for a friend's child sufficient to undermine complaints of pain).  Based upon

14  the record before him, the ALJ's credibility determination was supported by substantial evidence.

15          Plaintiff's testimony also differs from other statements made throughout the

16  record.  Plaintiff reported "feeling fine," having no family problems nor any impairments in her

17  ability to function when last seen by Sacramento County.  AT 219.  Plaintiff told Dr. Bates that

18  during the day, she was the primary care giver for her eight children, caring for several infants

19  and toddlers by herself while her older children were at school.  AT 131.  Dr. Bates also reported

20  that plaintiff stated that she was able to do chores, shop, cook, and run errands without

21  assistance.  AT 132.

22          Furthermore, the ALJ correctly noted signs of malingering.  AT 259.  Dr. Stearns,

23  an examining psychiatrist, was unable to give a functional assessment of plaintiff's abilities

24  because of her concerns about plaintiff's exaggeration of symptoms, AT 313, 314, and lack of

25  effort, AT 314.  While Dr. Stearns statements about Plaintiff's malingering are not affirmative

26  evidence sufficient to dismiss Plaintiff's complaints without comment, they are relevant factors

1   to consider in assessing Plaintiff's credibility.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th

2   Cir. 2004); see also Smolen, 80 F.3d at 1284 (holding that the ALJ is permitted to utilize the

3   ordinary techniques of credibility evaluation); 20 C.F.R. 416.929; SSR 96-7p.

4           The factors considered by the ALJ were all valid and supported by the record.

5   The ALJ correctly analyzed the lack of objective evidence supporting Plaintiff's subjective

6   complaints.  In addition, the ALJ properly noted the inconsistencies between Plaintiff's

7   testimony, her daily activities, and the testimony of Plaintiff's husband.  The ALJ's credibility

8   determinations were based on permissible grounds and will not be disturbed.

9           The ALJ's decision is fully supported by substantial evidence in the record and

10  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

11          1.  Plaintiff's motion for summary judgment or remand is denied, and

12          2.  The Commissioner's cross-motion for summary judgment is granted.

13  DATED:  September 18, 2006.

14

15                                    _____
                                      UNITED STATES MAGISTRATE JUDGE
16

17  13
18  Xiong.Mai.ss.wpd

19

20

21

22

23

24

25

26